NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC. v. GERVIS E. SADLER, INDIVIDUALLY AND BY AND THROUGH STEVE ANTHONY SADLER, HIS ATTORNEY-IN-FACT

No. 267PA10

(Filed 16 June 2011)

**Insurance— insurance policy—erroneous partial summary judgment—material issues of fact**

The trial court in a declaratory judgment action involving disputed coverage under an insurance policy improperly granted partial summary judgment in favor of defendant-insured on his breach of contract counterclaim. Genuine issues of fact existed concerning the causes of defendant's damages and the extent to which the policy applied to those losses.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, —— N.C. App. ——, 693 S.E.2d 266 (2010), affirming an order granting partial summary judgment for defendant entered on 21 May 2009 by Judge William C. Griffin, Jr. in Superior Court, Hyde County. Heard in the Supreme Court on 2 May 2011.

*Young Moore and Henderson P.A., by Walter E. Brock, Jr. and Matthew J. Gray, for plaintiff-appellant.*

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., and Ledolaw, by Michele A. Ledo, for defendant-appellee.*

MARTIN, Justice.

This case presents the question of whether partial summary judgment was properly granted on defendant's breach of contract counterclaim after an appraisal determined the amount of loss.

Gervis Sadler (Sadler), along with his wife Evelyn, formerly lived in a house in Swan Quarter, North Carolina. The house was constructed in 1946 and has been modified over the years. Sadler insured the property through a limited-peril policy issued by North Carolina Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau). On 1 September 2005, Sadler gave Farm Bureau notice of a claim for mold damage. Farm Bureau's adjuster and a professional engineer hired by Farm Bureau inspected the property, confirmed that mold was present, and sought to determine the cause of mold growth in the house. On 30 November 2005, Farm Bureau sent a letter denying Sadler's claim, explaining that Farm Bureau, "[u]pon careful review of [the] policy, . . . [could] find no coverage for mold not caused by a named peril."

Sadler telefaxed a letter to Farm Bureau disputing the denied claim on 6 March 2006. In the letter, Sadler noted that he "found that the coast guard station recorded 112 miles per hour winds on May 6, 2005" and shared his belief that the windstorm may have caused the damage. The adjuster examined the home again and estimated that repairs for "roof damage and interior damage due to roof damage" would cost $3,203.03. In May 2006 Farm Bureau tendered Sadler a check for that amount, which he did not cash.

By letter dated 5 June 2006, Sadler notified Farm Bureau that he was invoking the policy's appraisal provisions, which stated:

**Appraisal**—If you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of such item or loss. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request that a choice be made by a judge . . . in the state where the [insured property] is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

. . . .

In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

Farm Bureau did not respond to Sadler's 5 June 2006 letter. In another letter dated 22 June 2006, Sadler identified his appraiser (Lewis O'Leary) and noted that he had not heard from Farm Bureau regarding its choice of a representative. Sadler then sought court appointment of an umpire pursuant to the insurance policy. In an order dated 30 June 2006, the trial court appointed Martin Overholt to serve as the umpire. O'Leary sent a facsimile on 2 July 2006 notifying Farm Bureau of the umpire's appointment. Farm Bureau informed Sadler of the identity of its appraiser (Rick Manning) in a letter dated 31 July 2006. Manning and O'Leary inspected the house and outbuildings on 16 October 2006.

On 6 November 2007, Manning submitted his appraiser's report to O'Leary. The report stated that "the damages are . . . a result of a combination of wind and water damages, along with mold infestation in the lower section of the home, crawl space and floor system." Manning recommended that Farm Bureau pay Sadler $31,561.39 for the loss.

On 1 February 2008, O'Leary and Overholt certified an appraisal award to Sadler of "$162,500.00 as the actual cash value of the damages as the result of wind, occurring on May 6, 2005." In a check dated 18 March 2008, Farm Bureau tendered $31,561.39 to Sadler, which he

also did not cash. Instead, Sadler maintained in a letter dated 26 March 2008 that the money due for the loss was $150,500, after reducing the $162,500 to that amount to reflect policy limits.

On 20 March 2008, Farm Bureau filed a complaint for declaratory relief in the Superior Court, Wake County. Venue was later changed to Hyde County pursuant to a motion filed by Sadler. In its complaint Farm Bureau alleged that the appraisal award calculated by Sadler's appraiser and the umpire "fails to itemize the damages so that Farm Bureau can determine the covered losses and apply policy exclusions and/or limitations. The award also purports to determine the cause of loss, to wit: wind."

On 28 May 2008, Sadler filed an answer, moved to dismiss the action, and asserted affirmative defenses of waiver, estoppel, and collateral attack as to the appraisal award. In an amended answer Sadler asserted counterclaims alleging breach of contract, breach of the covenant of good faith, and unfair claim settlement practices. Discovery ensued, and the parties disagreed about its appropriate scope. On 27 April 2009, while further discovery was pending and still disputed, Sadler moved for partial summary judgment on his breach of contract counterclaim. He did not seek summary judgment on his "remaining claims for unfair and deceptive trade and claims practices."

The trial court entered an order on 21 May 2009 granting Sadler's request for partial summary judgment. The trial court concluded "that no genuine issue of material fact exists with respect to Sadler's counterclaim for breach of contract" and awarded Sadler $150,500, plus prejudgment interest. After noting that "[t]his is a final judgment on the breach of contract claim, which is less than all of Sadler's claims," the trial court certified its decision for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure.

Farm Bureau appealed. On 18 May 2010, the Court of Appeals held that "the trial court did not err in granting partial summary judgment to Sadler for the amount of the appraisal award." *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, —— N.C. App. ——, ——, 693 S.E.2d 266, 271 (2010). We allowed Farm Bureau's petition for discretionary review on 3 February 2011.

At the outset, we observe that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). A genuine issue of material fact arises when the "facts alleged . . . are of such nature as to affect the result of the action." *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971) (citation and quotation marks omitted); *see also City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 654, 268 S.E.2d 190, 193 (1980) ("An issue is material if, as alleged, facts would constitute a legal defense, or would affect the result of the action or if its resolution would prevent the party against whom it is resolved from prevailing in the action." (citations and internal quotation marks omitted)). "Rule 56 does not authorize the court to decide an issue of fact, but rather to determine whether a genuine issue of fact exists." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975).

Sadler had "the burden of clearly establishing lack of a triable issue" to the trial court. *See N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310, 230 S.E.2d 375, 379 (1976). Sadler also had the burden of showing that the insurance policy covered his losses. *Nationwide Mut. Ins. Co. v. McAbee*, 268 N.C. 326, 328, 150 S.E.2d 496, 497 (1966). On appeal, we view the pleadings and all other evidence in the record in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *See, e.g., Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 662, 488 S.E.2d 215, 221 (1997) (citations omitted). Cognizant of the burdens placed on Sadler and viewing the record in the light most favorable to the nonmoving party, we conclude that summary judgment was improperly granted.

"We first note the well-settled principle that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986) (citations omitted). Specifically, the Farm Bureau insurance policy both provides for and constrains the appraisal process, and that process cannot exceed the scope of the contractual provisions authorizing it. *See, e.g., Thomasville Chair Co. v. United Furn. Workers of Am.*, 233 N.C. 46, 49, 62 S.E.2d 535, 537 (1950). The policy states: "In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim."

The plain language of this policy provides that while the appraisal process assesses the value of the loss at issue, Farm Bureau retains

the right to determine in the first instance what portion of that loss is covered by the policy. Put differently, Farm Bureau is not obligated to pay the full amount—or for that matter, any amount—of an appraisal award, which may be reduced or denied by policy exclusions and limitations. *See, e.g.*, 2 Allan D. Windt, *Insurance Claims & Disputes* § 9.33, at 111 (3d ed. 1995) ("[T]he appraiser evaluates only the loss and does not consider questions of policy interpretation or scope of coverage." (citations omitted)). In sum, the policy's appraisal process is limited to a determination of the amount of loss and is not intended to interpret the amount of coverage or resolve a coverage dispute. *See* 15 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 210:42 (Dec. 1999) ("As a general rule, the sole purpose of an appraisal is to determine the amount of damage. . . . An appraisal does not necessarily determine the total amount due under the policy.").

The Farm Bureau limited-peril policy does not cover Sadler for damages "to the inside of a structure, or to property inside, caused by dust, rain, sand, sleet, snow or water, all whether driven by wind or not, which enter through an opening not made by the direct force of wind or hail." The record indicates that the policy also specifically excludes coverage for water damage or damage caused by wet rot, dry rot, bacteria, fungi, or protists unless the loss falls within a limited fungi coverage. Farm Bureau states that the limited fungi coverage extends to mold damage that "is the direct result of a peril insured against that applies to the damaged property [when] all reasonable means were used to save and preserve the property at and after the time of loss." Additionally, fungi coverage in Sadler's policy is limited to a specific maximum amount, no matter how much mold damage was indirectly caused by a named peril like wind.

In light of these policy provisions, the trial court's grant of Sadler's motion for summary judgment was error. "It is generally held that the motion should not be granted unless it is perfectly clear that no issue of fact is involved and *inquiry into the facts is not desirable* to clarify the application of the law." *Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975) (emphasis added) (citation and quotation marks omitted). Here, further inquiry into the factual context of Sadler's losses and the appraisal award is necessary to determine: (1) which damages were directly caused by wind and covered under the policy; and (2) which parts of the wind-related damages, if any, were directly caused by mold growth and thus limited to a specific maximum amount of fungi coverage under the policy. Accord-

ingly, the trial court erred in granting partial summary judgment in favor of Sadler because genuine issues of material fact must be resolved before the loss covered by the policy can be determined. Although we express no opinion on the final determination of coverage, "when, as here, the facts and circumstances surrounding a claim—especially causation—remain in dispute," the finder of fact must "determine whether the ultimate cause of the claimed damages falls within the scope of the policy's exclusionary provisions, as defined by the trial court." *Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 453, 481 S.E.2d 349,.355, *disc. rev. denied*, 346 N.C. 281, 487 S.E.2d 551 (1997) (citations omitted); *see also Wood v. Mich. Millers Mut. Fire Ins. Co.*, 245 N.C. 383, 384-85, 96 S.E.2d 28, 29-30 (1957) ("The evidence was sufficient to permit the jury to reach the conclusion that the damage to the building was the result of any of three conditions. . . . It was the duty of the court to declare the law applicable to each factual situation which the jury might accept as correct."); 17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 246:10, at 246-26 (Dec. 2000) ("Generally, . . . whether the loss . . . was caused by a covered risk is a question for the jury. Similarly, whether . . . the loss falls within a policy definition is a question of fact." (footnote and citation omitted)).

We therefore reverse the decision of the Court of Appeals and remand this case to that court for further remand to the trial court for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.