**PATEL v. SCOTTSDALE INS. CO.**

[221 N.C. App. 476 (2012)]

CHAMPAK PATEL D/B/A LIBERTY INN, Plaintiff v. SCOTTSDALE INSURANCE
COMPANY, Defendant

No. COA11-1198

(Filed 3 July 2012)

**Insurance—fire—value of destroyed building—appraisal process required**

Summary judgment for plaintiff was reversed and remanded in an insurance action involving the disputed value of a motel destroyed in a fire. The policy included a provision that required an appraisal process before a legal action was brought and plaintiff never invoked the appraisal process. The trial court should have stayed the litigation and ordered the parties to engage in the appraisal process, as would be the case in an arbitration proceeding.

Appeal by plaintiff from order entered 13 July 2011 by Judge Paul G. Gessner in Wake County Superior Court. Heard in the Court of Appeals 8 February 2012.

*Brent Adams & Associates, by Brenton D. Adams and Ashley B. Currin, for Plaintiff-appellant.*

*Dean & Gibson, PLLC, by Jeremy S. Foster and Michael G. Gibson, for Defendant-appellee.*

ERVIN, Judge.

Plaintiff Champak Patel d/b/a Liberty Inn appeals from an order granting summary judgment in favor of Defendant Scottsdale Insurance Company. On appeal, Plaintiff contends that the trial court erred by entering summary judgment in favor of Defendant on the grounds that the record demonstrates the existence of a genuine issue of material fact sufficient to preclude the entry of judgment in Defendant's favor. After careful consideration of Plaintiff's challenge to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be reversed and that this case should be remanded to the Wake County Superior Court for further proceedings not inconsistent with this opinion.

## I.  Background

### A.  Substantive Facts

Plaintiff owned the Liberty Inn, which was a motel located in Tarboro, North Carolina. In August 2008, Plaintiff purchased an insurance policy applicable to the motel property under which he was insured against certain losses, including losses caused by fire. In early 2009, the motel was totally destroyed by fire. After Plaintiff filed a claim with Defendant, Defendant conducted an investigation for the purpose of determining, among other things, the amount of the loss payment to which Plaintiff was entitled under the policy.

As part of the investigation process, Defendant hired Crawford & Company to prepare an estimate of the cost of repairing the motel. After conducting an extensive analysis, Clyde A. Baker, an adjuster employed by Crawford & Company, determined that the motel had a replacement value of $346,500.39; that the "property to be repaired was subject to depreciation of $68,132.42;" that the "Actual Cash Value of the repairs is obtained by subtracting the depreciation from the Replacement Cost Value;" and that "the Actual Cash Value of the repairs to [the motel] is $278,367.97." As Mr. Baker clearly stated, "[t]he repair estimate that I prepared does not reflect the [motel's] fair market value;" the amounts set out in his report do not "give the actual cash value" of the motel; and that the monetary figure "that I prepared . . . provides only the estimated cost to repair the property."

In addition, Defendant hired Moore & Piner, L.L.C., to conduct an appraisal of the market value of the motel building. According to Andy E. Piner, an appraiser with Moore & Piner, the fifty-one year old motel building had a market value of $76,533.00. In order to estimate the motel's market value immediately prior to the fire, Mr. Piner first determined that the cost of reproducing the motel would be $382,666.00. Next, Mr. Piner reduced this reproduction cost figure by a $306,133.00 allowance for depreciation. Unlike Mr. Baker, who based his depreciation figure solely on the physical deterioration of the motel property, Mr. Piner's depreciation estimate relied on market-related factors. More specifically, Mr. Piner utilized the Effective Age-Life method, which rests upon "the ratio of an improvement's Effective Age and its Total Economic Life Expectancy," in order to determine an appropriate allowance for depreciation. In the course of applying the Average Age-Life method, Mr. Piner determined that the average "economic life expectancy" of the motel was 40 years; that, based on a comparison of the amount that the motel would need to

earn in order to support a $382,666.00 investment and the amount that the motel was actually earning, the motel was 80% depreciated; and that a reduction in the reproduction cost amount to reflect an 80% depreciation allowance left a fair market value of $76,533.00. According to Mr. Piner, this valuation estimate, which used a cost-based approach, was consistent with the results he derived using an income-based approach.

In seeking to establish that a higher valuation was appropriate, Plaintiff employed David W. Duke, an appraiser with Tom Keith & Associates, Inc., "to appraise the market value of the structure or building located on the property in question separate and apart from the land upon which it sat as that market value existed just prior to the loss by fire." Mr. Duke opined that the motel had a market value of $199,246.00. However, a careful examination of Mr. Duke's report indicates that he employed a "cost approach" that only recognized "physical depreciation." Mr. Duke believed the "cost approach" to be an appropriate method of determining market value because, "[f]or insurance purposes, the courts have generally accepted the definition of market value to be the actual cash value or replacement cost new, less physical depreciation." As a result, Mr. Duke developed his $199,246.00 estimate by subtracting $132,831.00 in physical depreciation from an estimated replacement cost of $332,077.00.

Finally, Plaintiff stated that he "owned the motel described in [the] Complaint" and that, "prior to the fire . . . my motel building and structure was in good repair and . . . in excellent condition." According to Plaintiff, he had "purchased at least three motels during [his] life" and had "spent many years in the motel business." Plaintiff also asserted that, in addition to his own motel-related experience, he had "family members and close friends who are and have for many years been in the motel business and in the business of buying and selling motels." Based upon his own experience and what he knew of the experiences of his family and friends, Plaintiff believed that he had "obtained a knowledge of motel real estate values in eastern North Carolina." As a result, Plaintiff opined that "the fair market value and the market value, which terms are synonymous, of the building structure of the motel . . . immediately prior to the fire," "separate and apart from the land upon which [his] motel sat . . . was no less than $278,367.97."

Based on this investigation, Defendant concluded, based on the provisions of the policy, that, since Mr. Baker's repair cost estimate exceeded Mr. Piner's market value estimate, it was obligated to pay

PATEL v. SCOTTSDALE INS. CO.

[221 N.C. App. 476 (2012)]

an amount equal to Mr. Piner's market value estimate in settlement of Plaintiff's claim for damage to the motel building. As a result, Defendant paid Plaintiff $20,000.00 relating to Plaintiff's business personal property loss, $23,760.00 for debris removal, and $75,533.00 relating to the destruction of the motel building. Although Plaintiff did not dispute the payments that he received for loss of business personal property and debris removal, he did not agree with Defendant's estimate of the motel building's market value.

### B.  Procedural History

On 22 March 2010, Plaintiff filed a complaint against Defendant in which he sought compensatory and punitive damages for breach of contract, violation of N.C. Gen. Stat. § 58-63-15(11), infliction of emotional distress, and unfair or deceptive trade practices. In his complaint, Plaintiff alleged that, given the terms of the applicable insurance policy, Defendant owed Plaintiff the policy limit of $250,000.00 as compensation for the loss of the motel building. Defendant filed an answer and an amended answer on 29 June 2010 and 2 August 2010, respectively, in which it denied the material allegations of Plaintiff's complaint, asserted various defenses, and sought dismissal of Plaintiff's claims.

On 5 May 2011, Defendant filed a motion seeking entry of an order granting summary judgment for Defendant in which it alleged, in part, that:

> The Plaintiff owned a motel which was destroyed by fire. The motel was insured by the Defendant at the time of the fire. The Defendant retained an independent adjuster to determine the cost of repairing the motel and also retained an independent appraiser to determine the actual cash value of the motel prior to the fire. The Plaintiff's insurance policy allowed the Defendant to settle the claim by electing to pay the Plaintiff either the cost to repair the damaged property or the actual cash value of the property prior to the fire. The Defendant has paid to the Plaintiff the actual cash value of the motel prior to the fire and has complied fully with the terms, conditions and requirements of the insurance policy. . . .

In support of its motion, Defendant submitted various documents, including a copy of the applicable insurance policy; various discovery responses provided by or on behalf of Plaintiff; an affidavit executed by Mr. Baker, which was accompanied by a repair estimate; and an appraisal prepared by Mr. Piner. On 22 June 2011, Plaintiff filed a

response to Defendant's summary judgment motion in which he submitted his own affidavit; that of Mr. Duke, which was accompanied by an appraisal report; and the deposition of Mr. Baker, and asserted that there were "disputed issues of material fact" which precluded the entry of summary judgment in favor of Defendant. .

After a hearing conducted during the 29 June 2011 civil session of the Wake County Superior Court, at which it considered the arguments of counsel, the materials submitted by the parties, and Mr. Piner's deposition, the trial court entered an order on 13 July 2011 granting summary judgment in favor of Defendant. Plaintiff noted a timely appeal to this Court from the trial court's order.

## II.  Legal Analysis

### A.  Standard of Review

According to N.C. Gen. Stat. § 1A-1, Rule 56(c), summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." "A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Lowe v. Bradford,* 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations omitted). "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington,* 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citing *DeWitt v. Eveready Battery Co.,* 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002)). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway,* 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *disc. review denied,* 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied,* 353 N.C. 371, 547 S.E.2d 810, *cert. denied,* 534 U.S. 950, 122 S. Ct. 345, 151 L. Ed. 2d 261 (2001). "A genuine issue of material fact arises when 'the facts alleged . . . are of such nature as to affect the result of the action.' " *N.C. Farm Bureau Mut. Ins. Co. v. Sadler,* 365 N.C. 178, 182, 711 S.E.2d 114, 116 (2011) (quoting *Kessing v. Nat'l Mortg. Corp.,* 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971) (citation and quo-

.tation marks omitted)); *see also City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 654, 268 S.E.2d 190, 193 (1980) (stating that "[a]n issue is material if, as alleged, facts would constitute a legal defense, or would affect the result of the action or if its resolution would prevent the party against whom it is resolved from prevailing in the action").

## B. Construction of Insurance Policies

"We begin by noting the well-established principle that 'an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto.'" *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000) (quoting *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986).

The rules of construction for insurance policies are likewise familiar:

". . . "Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. . . . [I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein."

*Gaston County*, 351 N.C. at 299-300, 524 S.E.2d at 563 (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978)).

## C. Plaintiff's Compliance with Policy Provisions

According to the relevant policy provisions:

In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property . . .;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property or like kind and quality[.]

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

In addition, the policy provides that "[w]e will determine the value of Covered Property in the event of loss or damage" "[a]t actual cash value as of the time of loss or damage." The policy defined the term "actual cash value" as "market value," which was further defined, in the event of a total loss, as "the amount that a reasonable purchaser would have paid for the property covered at the time of loss." As a result, Defendant clearly had the choice of paying Plaintiff either the cost of "repairing or replacing" the motel or "the amount that a reasonable purchaser would have paid" for the motel "at the time of the loss."

Although the parties have spent considerable time and energy debating the extent, if any, to which there was a genuine issue of material fact concerning the market value of Plaintiff's motel, we conclude that we need not address that issue in order to resolve this case. According to another policy provision:

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Consistently with N.C. Gen. Stat. § 58-44.16(f)(14), the policy also provides, in pertinent part, that:

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The

appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Finally, the policy states that:

We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

According to Defendant, the fact that Plaintiff never invoked the appraisal provision required by N.C. Gen. Stat. § 58-44-16(f)(14) precludes him from maintaining the present litigation. More specifically, Defendant argues that:

If Patel wanted to contest the value of his property, the proper channel for resolving the dispute was to select his own appraiser and submit the matter to an umpire - not to initiate litigation. In fact, the policy states that no legal action against Scottsdale may be initiated unless the insured has complied with the terms of the policy[.]

A careful examination of the policy language satisfies us that Defendant is correct in contending that initiation of, participation in, and completion of the appraisal process is a condition precedent to the commencement of litigation against Defendant. Simply put, the relevant policy language explicitly provides that Defendant has no obligation to make a loss payment until the parties have either agreed on the amount of the loss or the appraisal process has been completed. Although Plaintiff appears to contend that the appraisal procedures are optional rather than mandatory, the fact that either agreement or an appraisal decision is a prerequisite to the making of a loss payment precludes us from finding Plaintiff's argument to be persuasive

despite the use of what appears to be permissive language in certain parts of the policy that prescribe the initiation of the appraisal process. As a result, we conclude that Plaintiff was required to participate in and complete the appraisal process prior to filing his complaint in this case and that he appears not to have done so.[1]

The fact that Plaintiff failed to comply with the mandatory appraisal process does not, however, end our inquiry. Instead, we are required to determine what remedy should be adopted in light of Plaintiff's failure to comply with the relevant policy provisions. In *Enzor v. North Carolina Farm Bureau Mut. Ins. Co.*, 123 N.C. App. 544, 545, 473 S.E.2d 638, 639 (1996), a case in which "[p]laintiff's potatoes were destroyed by fire," the trial court ordered "that the actual cash value of plaintiff's 1990-1991 sweet potato crop be determined by the appraisal method as set out in the policy." In deciding an appeal from a trial court order adopting a report developed at the conclusion of the appraisal process, we noted that "[t]his policy appraisal procedure is analogous to an arbitration proceeding." *Enzor*, 123 N.C. App at 546, 473 S.E.2d at 639. For that reason, we conclude that the appropriate remedy for use in situations in which a litigant initiates civil litigation based on a claim that is, in fact, subject to arbitration provides a useful analogy for purposes of determining what steps should be taken in the event that a plaintiff initiates civil litigation without having first complied with the appraisal procedures mandated by N.C. Gen. Stat. § 58-44-16(f)(14).

After reviewing the relevant decisions of this Court, we note that, in the event that a litigant initiates civil litigation on the basis of a claim that is subject to arbitration, the appropriate remedy is to order the parties to arbitrate their dispute and to stay the litigation pending completion of the arbitration process. *N.C. Farm Bureau Mut. Ins. Co. v. Sematoski*, 195 N.C. App. 304, 310, 672 S.E.2d 90, 94 (2009) (holding that certain disputed claims were arbitrable and reversing a trial court order denying the defendant's motion to compel arbitration and stay proceedings); *see also, e.g., In re Fifth Third Bank, Nat'l Ass'n*, ____ N.C. App ____, ____, 716 S.E.2d 850, 853 (2011) (noting that the trial court had "entered an order compelling Plaintiffs to submit their claims against [defendant] to binding arbitration, [and] staying the litigation of Plaintiffs' claims against [defendant] pending

---

1. As we understand Plaintiff's brief, he makes no claim to have initiated or attempted to initiate the appraisal process. For that reason, we need not determine whether any action that Plaintiff has taken to date has had the effect of initiating the appraisal process.

## PATEL v. SCOTTSDALE INS. CO.

[221 N.C. App. 476 (2012)]

completion of the arbitration process"). Consistently with this line of decisions, the trial court in *Enzor* stayed the civil litigation between the parties until completion of the appraisal process. Such an approach seems reasonable to us. As a result, we conclude that a similar procedure should be adopted in cases involving a failure to comply with the appraisal provisions required by N.C. Gen. Stat. § 58-44.16(f)(14) and that, instead of granting summary judgment in Defendant's favor, the trial court should have stayed the proceedings resulting from the filing of Plaintiff's complaint, ordered the parties to engage in the appraisal process required by the relevant policy language, and retained jurisdiction over the case for the purpose of resolving any additional issues that might arise between the parties.

### III. Conclusion

Thus, we conclude that (1), given the language of the applicable policy provisions, participation in the appraisal process is a condition precedent to Plaintiff's ability to file suit against Defendant; (2) the parties have not completed the appraisal process as set out in the insurance contract; (3), since the appraisal process is the appropriate forum for determination of the dispute between the parties over the amount of Plaintiff's loss and since Defendant invoked Plaintiff's failure to comply with the appraisal process as a defense to Plaintiff's claim, the trial court had no authority to grant summary judgment in favor of Defendant on the basis of any failure on Plaintiff's part to forecast evidence demonstrating the existence of a genuine issue of material fact concerning the amount of Plaintiff's loss; and (4), rather than dismissing Plaintiff's claim based on his failure to comply with the appraisal process, the trial court should have simply stayed further proceedings in this case until the appraisal process had been completed.[2] As a result, for the reasons discussed above, we conclude that the trial court's order granting summary judgment in favor of Plaintiff should be, and hereby is, reversed and that this case should be, and hereby is, remanded to the Wake County Superior Court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges BRYANT and ELMORE concur.

---

2. We express no opinion concerning the extent, if any, to which Plaintiff is currently entitled to initiate the appraisal procedures set out in the relevant policy language or whether Plaintiff has any other grounds for resisting the invocation of the appraisal process and leave such issues for determination by the trial court on remand