IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-887

Filed: 17 March 2020

Mitchell County, No. 16 CVS 229

MICHAEL STACY BUCHANAN, Plaintiff,

v.

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., Defendant.

Appeal by plaintiff from orders entered 8 December 2017 and 21 June 2019 by Judges Mark E. Powell and Robert Bell, respectively, in Mitchell County Superior Court. Heard in the Court of Appeals 3 March 2020.

*Charlie A. Hunt, Jr. for plaintiff-appellant.*

*Marcellino & Tyson, PLLC, by Clay A. Campbell, for defendant-appellee.*

TYSON, Judge.

Michael Stacy Buchanan ("Plaintiff") appeals from the order granting, in part, North Carolina Farm Bureau Mutual Insurance Company's ("Defendant") motion for summary judgment, and also from the order granting Defendant's motion for a directed verdict. We affirm the trial court's orders.

## I. Background

Plaintiff applied for homeowner's insurance with Defendant in December 2012. His application asserted his residence ("the Home") was built in 1957. After

Defendant issued Plaintiff a homeowner's policy ("the Policy"), it learned the Home had actually been built in 1933. Defendant sent Plaintiff a letter on 8 February 2013, cancelling the Policy effective as of the end of that month.

Plaintiff submitted a homeowner change application to Defendant on 20 February 2013, requesting a decrease in coverage on the Policy. Defendant reissued the Policy to Plaintiff and backdated coverage to 19 December 2012. Plaintiff renewed the Policy on 19 December 2013.

The Home and some of Plaintiff's personal property were damaged by fire on 10 June 2014. Plaintiff reported the loss to Defendant. An employee of Defendant met with Plaintiff at the Home later that day. Plaintiff informed Defendant's employee he could not enter the Home until the fire investigation was complete. Defendant's employee issued Plaintiff a check for $2,000.00 towards Plaintiff's living expenses.

Todd Kirby, a large-loss adjuster for Defendant, met with Plaintiff and inspected and photographed the damage to the Home on 12 June 2014, and again on 28 June 2014. Kirby prepared an estimate of $76,877.72 to repair the damages. Kirby mailed the estimate to Plaintiff on 1 July 2014. Plaintiff sent Kirby a letter on 5 August 2014, stating he would not be restoring or rebuilding the Home, objecting to Defendant requiring him to inventory his damaged personal property, wishing to conclude the settlement process, and requesting $217,000.00 to settle his claims.

Kirby replied to Plaintiff with a letter sent 18 August 2014, and enclosed a section of the Policy outlining, among other duties, Plaintiff's duty to prepare and submit an inventory after a loss. On 25 August 2014, Defendant mailed Plaintiff a check for $4,800.00 to cover additional living expenses for six months. Plaintiff provided an initial personal property inventory to Defendant in late August 2014.

Kirby reviewed Plaintiff's inventory and sent a letter to Plaintiff on 10 September 2014 explaining the Policy provisions relating to the differences between actual cash value ("ACV") and replacement cost value ("RCV") for losses. The letter included a check to Plaintiff for $9,066.16 for the ACV of the property listed in his inventory. Kirby discussed the estimate with Plaintiff on 15 September 2014 and advised Plaintiff he could submit his own estimate from a contractor of his choice. Defendant mailed Plaintiff a second living expenses check for $4,800.00 on 20 November 2014.

Defendant mailed Plaintiff a check for the damage to the Home in the amount of $74,377.72, the amount of Kirby's estimate less Plaintiff's deductible, on 13 January 2015. Plaintiff voided and returned that check to Defendant in a letter from his counsel on 22 May 2015, which also included an estimate prepared by a general contractor indicating $147,125.34 would be a reasonable cost for repairs. Defendant replied to Plaintiff's counsel seeking supporting documentation for the estimate.

Plaintiff's counsel submitted additional pages of inventory to Defendant on 31 July 2015.

Kirby determined the ACV of the additional inventory was $8,870.82, and Defendant issued a check to Plaintiff for that amount on 28 August 2015. Defendant reiterated its request for supporting documentation in letters to Plaintiff's counsel on 27 October 2015 and 16 February 2016.

Plaintiff filed suit against Defendant on 15 November 2016, seeking damages caused by the fire and alleging breach of the Policy contract and unfair and deceptive trade practices. Defendant filed a motion to stay the proceedings and compel appraisal pursuant to the Policy on 9 December 2016. The trial court granted Defendant's motion to stay and compelled appraisal by order entered on 2 March 2017.

Plaintiff moved to terminate the stay on 30 May 2017, after retaining his own appraiser, alleging dilatory inaction by Defendant. The trial court denied Plaintiff's motion and modified the order granting the stay to set a calendar for the appraisal. The chosen umpire made his appraisal award in September 2017.

Plaintiff appealed the order on 2 October 2017, and also filed a motion to stay the proceedings pending its appeal. Defendant filed three motions with the trial court on 10 October 2017: to dismiss Plaintiff's appeal, for summary judgment, and to confirm the appraisal award. The trial court entered a series of orders on 8 December

2017: denying Plaintiff's motion to stay, dismissing Plaintiff's appeal, and granting partial summary judgment in favor of Defendant on the issue of unfair and deceptive trade practices.

Plaintiff appealed the trial court's grant of partial summary judgment. This Court dismissed his appeal as interlocutory in an unpublished opinion on 16 April 2019. *Buchanan v. N.C. Farm Bureau Mut. Ins. Co.* __ N.C. App. __, 825 S.E.2d 704 (2019) (unpublished). The parties proceeded to trial in May 2019.

Defendant made several motions *in limine* prior to trial, including to exclude any information that arose after the appraisal award, specifically identifying a report by Plaintiff's proposed expert witness, Terry LaDuke, based on his inspection of the Home in September 2018. The trial court preliminarily reserved ruling on the motion.

Defendant's counsel renewed his motion *in limine* prior to LaDuke taking the stand as Plaintiff's final witness. The trial court heard arguments, allowed Defendant's motion, and excluded LaDuke's proposed testimony and report from evidence. Plaintiff rested his case, and Defendant moved for a directed verdict. The trial court granted Defendant's motion for a directed verdict and entered its order on 21 June 2019. Plaintiff filed timely notice of appeal.

## II. Jurisdiction

Plaintiff's brief does not include a statement of the grounds for appellate review, as required by N.C. R. App. P. 28(b)(4). "Compliance with the rules . . . is mandatory." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 194, 657 S.E.2d 361, 362 (2008) (citations omitted).

However, "noncompliance with the appellate rules does not, ipso facto, mandate dismissal of an appeal." *Id.* at 194, 657 S.E.2d at 363 (citation omitted). "Noncompliance with [Appellate Rule 28(b)], while perhaps indicative of inartful appellate advocacy, does not ordinarily give rise to the harms associated with review of unpreserved issues or lack of jurisdiction." *Id.* at 198, 657 S.E.2d at 365.

Plaintiff's failure to comply with Appellate Rule 28(b)(4) is non-jurisdictional and does not mandate dismissal. *See id.* Counsel is admonished that our Appellate Rules are mandatory, compliance is expected therewith, and sanctions are available for violation. *Id.*; N.C. R. App. P. 28(b)(4). This appeal is properly before us pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2019).

## III. Issues

Plaintiff argues the trial court erred by granting: (1) Defendant's motion to stay the trial proceedings and compel appraisal of the Home; (2) Defendant's motion for summary judgment in part, on the unfair and deceptive trade practices claim; (3) Defendant's motion *in limine* to exclude the testimony of his environmental expert;

and, (4) Defendant's motion for directed verdict on his breach of contract claim at the close of Plaintiff's evidence.

IV. Appraisal

A. Standard of Review

"A trial court's denial of a motion to stay is subject to an abuse of discretion standard of review." *Park East Sales, LLC v. Clark-Langley, Inc.*, 186 N.C. App. 198, 209, 651 S.E.2d 235, 242 (2007).

B. Analysis

Our Supreme Court has stated, "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *N.C. Farm Bureau Mut. Ins. Co., Inc. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 117 (2011) (citation omitted). Plaintiff argues the trial court erred in granting Defendant's motion to stay the trial and compelling an appraisal of the Home. Defendant argued, and the trial court agreed, such appraisal was compelled by the terms of the Policy and this Court's precedent. *See Patel v. Scottsdale Ins. Co.*, 221 N.C. App. 476, 482-83, 728 S.E.2d 394, 398-99 (2012) (interpreting insurance policy language as requiring appraisal process as condition precedent to filing suit against insurer).

Plaintiff argues the reasoning in *Patel* is inapplicable to this case, because the Policy at bar states the amount of loss payment "may be determined by . . . [e]ntry of a final judgment." Plaintiff argues this provision necessarily provides for

determining the amount of loss by filing suit. Plaintiff cites two cases, neither of which are binding upon this Court, to distinguish *Patel*.

Plaintiff cites *Hayes v. Allstate Ins. Co.*, as persuasive authority to support its argument. *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332 (7th Cir. 1983). The policy under review in *Hayes* did not expressly provide that no action could be maintained upon it until after the loss was determined by appraisal. *Id.* at 1335.

The Policy before us expressly provides: "No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy." Section I of the Policy includes an appraisal clause: "If you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of such item or loss." Plaintiff's reliance on *Hayes* is unsupported and without merit.

Plaintiff also cites *Otto Indus. N. Am. v. Phx. Ins. Co.*, No. 3:12-CV-717-FDW-DCK, 2013 WL 2124163 (W.D.N.C. May 15, 2013). The federal trial court in *Otto* distinguished the Court's holding in *Patel,* because the interpretation and application of the terms and conditions of the policy at issue "includ[ed] the number of occurrences, the existence and scope of coverage for equipment breakdowns[,] and whether repair or replacement coverage is appropriate." *Otto*, 2013 WL 2124163, at *2. The court also noted the case before it "involves allegations concerning [the insurer's] bad faith conduct that are not subject to appraisal." *Id.*

Plaintiff argues the trial court erred in following *Patel,* because his allegations against Defendant assert bad faith conduct. Plaintiff failed to allege any issues concerning the interpretation and application of the terms and conditions of the policy, as were raised in *Otto.* Although Plaintiff alleges bad faith conduct by Defendant, such conduct alone does not justify disregarding the plain language of the Policy, which requires appraisal as a condition precedent to suit when the loss amount is disputed.

Plaintiff has failed to show the trial court abused its discretion by granting Defendant's motion to stay. Plaintiff's argument is overruled.

V. Unfair and Deceptive Trade Practices

A. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and internal quotation marks omitted).

When reviewing a trial court's entry of summary judgment, "[a]ll facts asserted by the adverse party are taken as true, and their inferences must be viewed in the light most favorable to that party." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citations omitted). "The showing required for summary judgment may be

accomplished by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Id.*

## B. Analysis

Plaintiff argues the trial court erred in granting Defendant's motion for summary judgment on his unfair and deceptive trade practices claim. Plaintiff alleges Defendant violated N.C. Gen. Stat. §§ 58-63-15(11) and 75-1.1 (2019) in both the issuance and handling of the Policy. Plaintiff alleges Defendant committed six of the unfair claim settlement practices listed in § 58-63-15(11):

> a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
>
> . . .
>
> c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> . . .
>
> f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> . . .
>
> h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;
>
> . . .

> *l.* Delaying the investigation or payment of claims by requiring an insured claimant, or the physician, of [or] either, to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which submissions contain substantially the same information

N.C. Gen. Stat. § 58-63-15(11).

Although N.C. Gen. Stat. § 58-63-15(11) (2019) requires a plaintiff show the alleged violations were committed "with such frequency as to indicate a general business practice . . . . unfair and deceptive acts in the insurance area are not regulated exclusively by Article 63 of Chapter 58, but are also actionable under N.C. Gen. Stat. § 75-1.1." *Country Club of Johnston Cty., Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 243-44, 563 S.E.2d 269, 277 (2002) (citations and internal quotation marks omitted).

A violation of N.C. Gen. Stat. § 58-63-15 constitutes a violation of N.C. Gen. Stat. § 75-1.1. *Id.* at 244, 563 S.E.2d at 278 (citation omitted). It is also "unnecessary to determine whether the plaintiffs had established that the acts occurred with such frequency as to constitute a general business practice" in order to recover against an insurer under N.C. Gen. Stat. § 75-1.1. *Id.* (citation omitted).

### 1. Issuance

Plaintiff first alleges Defendant violated N.C. Gen. Stat. § 58-63-15(11)(a) by agreeing to insure the Home for $149,000.00 prior to inspecting the property, then cancelling the policy and offering a lower coverage upon learning of the true

construction date. Plaintiff argues he was then induced by Defendant's agent to pay an extra premium to get 25% more coverage. Plaintiff does not argue or allege any misrepresentation of pertinent facts or insurance policy provisions by Defendant in this assertion.

Although Plaintiff and Defendant dispute who bears the responsibility for the basis of 1957 being the Home's construction year on the original application, this purported issue does not raise a question of material fact. Reviewing all facts asserted by Plaintiff as true, with all inferences therefrom viewed in the light most favorable to him, Plaintiff failed to show a misrepresentation of "pertinent facts or insurance policy provisions relating to coverages at issue." N.C. Gen. Stat. § 58-63-15(11)(a).

Between December 2012 and June 2014, when the Home burned, Plaintiff had eighteen months to seek either coverage with another insurer or to propose amendments or endorsements to the Policy with Defendant. Defendant informed Plaintiff in February 2013 it was cancelling the Policy, in part because it was "unsure of the year of construction and square footage" of the Home. The record on appeal does not reflect any protest or challenge of this decision by Plaintiff. Instead, Plaintiff submitted a homeowner change policy, which Defendant accepted. Defendant reissued the Policy and backdated coverage to its original issuance date. Plaintiff chose to renew the Policy for an additional year in December 2013.

Plaintiff has not shown a misrepresentation by Defendant of any "pertinent facts or insurance policy provisions relating to coverages at issue." *Id.* Plaintiff has also not shown any inducement by Defendant tending to show unfair and deceptive trade practices. N.C. Gen. Stat. § 75-1.1. Plaintiff's argument concerning Defendant's issuance of the Policy is overruled.

## 2. Handling

Plaintiff further argues Defendant committed several unfair claim settlement practices listed in § 58-63-15(11) in its interactions with Plaintiff after the fire. Specifically, Plaintiff alleges Defendant: (1) sent an unlicensed adjustor to conduct its estimate, who (2) "made a very brief examination of the premises and offered [Plaintiff] about half of the replacement cost" of the Home and personal property; (3) forced Plaintiff to obtain at his own expense documentation of the damages; (4) ignored Plaintiff's submitted valuation; and, (5) only requested an appraisal two and a half years after the fire.

Plaintiff asserts Kirby was not a licensed insurance adjuster at the time of his inspection of the Home. Plaintiff proffered as evidence a print-out of a North Carolina Department of Insurance online licensee search showing no results for Kirby as of 15 October 2017. Kirby proffered as evidence a copy of his license from the Department of Insurance and a print-out of an online search result from the North Carolina Licensing Board for General Contractors showing his status as a licensee as of 25

January 2017.  Based upon the record before us, Plaintiff does not show Kirby was unlicensed in June 2014.

The remainder of Plaintiff's arguments all arise from Defendant's conduct pursuant to the Policy, and Plaintiff's displeasure with their handling and payments of his claims.  While Plaintiff clearly suffered from the fire and loss, he was advanced multiple payments and tenders due for his losses and has failed to forecast evidence Defendant engaged in any of the alleged unfair and deceptive trade practices he asserts as grounds to show the trial court erred in granting Defendant's motion for summary judgment.

Defendant has performed its duties under the provisions of the Policy.  Accepting all inferences asserted from Plaintiff's facts in the light most favorable to him, he cannot prove Defendant committed unfair and deceptive trade practices in its handling of his claims under the Policy. *See Dobson*, 352 N.C. at 83, 530 S.E.2d at 835.  Defendant's argument is overruled.

## VI. Exclusion of Expert Testimony

### A. Standard of Review

"A motion *in limine* seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial . . . . A trial court's ruling on a motion *in limine* will not be reversed absent an abuse of discretion." *Luke v. Omega Consulting*

*Grp., LC*, 194 N.C. App. 745, 750, 670 S.E.2d 604, 609 (2009) (citations and internal quotation marks omitted).

## B. Analysis

Plaintiff argues the trial court erred in refusing to allow the testimony and report of his expert witness, Terry LaDuke. Plaintiff sought to introduce this evidence to show Defendant should have known possible contamination of the Home posed a potentially dangerous threat to human occupancy, and Defendant should have inspected the damage more thoroughly.

Defendant objected to LaDuke's proposed testimony and report on the grounds that LaDuke had inspected the Home and prepared his report in 2018, long after the loss and appraisal award had been entered. Under the Policy, the parties had already conducted the appraisal process and settled upon the value of the Home without LaDuke's report.

When Defendant renewed its motion *in limine* before LaDuke's testimony, the trial court asked Plaintiff's counsel if Defendant knew about the contamination of the Home when it made an offer to Plaintiff. Plaintiff's counsel admitted he did not know whether Defendant "knew the extent" of the contamination. The trial court further asked if Plaintiff had raised the issue of potential contamination during the appraisal process. Plaintiff's counsel did not directly answer the trial court. Instead, Plaintiff's

counsel argued it would be unreasonable for Defendant to spend tens of thousands of dollars to rebuild a home that would be purportedly uninhabitable.

The trial court granted Defendant's motion and disallowed LaDuke from testifying. Considering the sole issue remaining before the court was the breach of contract, and the parties had settled the value of the Home in the appraisal process, LaDuke's testimony would have been irrelevant. Plaintiff has failed to show the trial court erred in granting Defendant's motion for summary judgment. Plaintiff's argument is overruled.

## VII. Directed Verdict

### A. Standard of Review

"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citation omitted).

> In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.

*Turner v. Duke University*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989) (citation omitted).

## B. Analysis

Plaintiff does not argue his claim for breach of contract withstands Defendant's motion for a directed verdict. Instead, he argues different superior court judges ruled upon Defendant's motions for summary judgment and directed verdict, and because Defendant had argued in both motions that the appraisal of the Home resolved the contract issues in this case, the judge who entered the directed verdict did not have the authority to overrule the previous judge's summary judgment ruling on this same issue.

This Court has previously rejected this argument. "[A] pretrial order denying summary judgment has no effect on a later order granting or denying a directed verdict on the same issue or issues." *Clinton v. Wake County Bd. of Education*, 108 N.C. App. 616, 621, 424 S.E.2d 691, 694 (1993).

In *Clinton*, the appellant asserted error in the trial judge's entry of directed verdict on claims, which a different judge had previously denied summary judgment. *Id.* This Court declined to review the appellant's arguments based upon the prior denial of summary judgment. *Id.* The "denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in trial on the merits." *Id.* (quoting *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985)). Plaintiff's argument is overruled.

## VIII. Conclusion

Plaintiff has failed to show the trial court abused its discretion in granting Defendant's motion to stay the trial proceedings and to compel an appraisal of the Home. The appraisal process was required by the Policy as a condition precedent to Plaintiff filing suit against Defendant.

Accepting all facts asserted by Plaintiff on his unfair and deceptive trade practices claim as true, and viewing all inferences therefrom in the light most favorable to him, Plaintiff failed to show a misrepresentation by Defendant of "pertinent facts or insurance policy provisions relating to coverages at issue" in the issuance of the Policy. N.C. Gen. Stat. § 58-63-15(11)(a).

Plaintiff failed to show Kirby was an unlicensed contractor when he inspected the Home. All of Plaintiff's other allegations of unfair and deceptive trade practices arise from Defendant's asserted conduct pursuant to the provisions of the Policy. Defendant performed its duties and exercised it rights reserved under the Policy. Plaintiff cannot show a genuine issue of material fact exists to support his unfair and deceptive trade practices claims.

The trial court did not abuse its discretion in granting Defendant's motion *in limine* to exclude Plaintiff's proffered expert witness. The proposed evidence did not and could not relate to the remaining issue of breach of contract at trial.

Denial of a motion for summary judgment is not reviewable on appeal from a directed verdict and judgment rendered after trial on the merits. *Clinton*, 108 N.C.

App. at 621, 424 S.E.2d at 694.  Plaintiff's argument asserting the trial court erred in directing a verdict in favor of Defendant on the same issue, where a previous superior court judge had denied summary judgment, is precluded by precedent. *See id.*

The trial court's orders are affirmed.  *It is so ordered.*

AFFIRMED.

Chief Judge MCGEE and Judge YOUNG concur.