Dillard/Goldsboro Alumni & Friends, Inc. v. Smith, 2016 NCBC 32.

STATE OF NORTH CAROLINA

COUNTY OF WAYNE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 59
("DGAF Action")

DILLARD/GOLDSBORO ALUMNI
AND FRIENDS, INC., )
     Plaintiff )
     )
    v. )
     )
RAYMOND E. SMITH, JR. and )
NATHANIEL MOORE, )
     Defendants )

| | |
|---|---|
| DILLARD/GOLDSBORO ALUMNI AND FRIENDS, INC., | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| RAYMOND E. SMITH, JR. and NATHANIEL MOORE, | ) |
| Defendants | ) |

STATE OF NORTH CAROLINA

COUNTY OF WAYNE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 340
("Burden Action")

| | |
|---|---|
| PATRICIA BURDEN, WINSTON BARNES and MINERVA WOODARD, Directors for and on Behalf of The Dillard/Goldsboro Alumni and Friends Association, Inc., | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| SEDRICK DUNSON, JOHN HICKS, The Dillard/Goldsboro Alumni and Friends Association, Inc, as a Nominal Defendant, | ) |
| Defendants | ) |

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT IN THE DGAF ACTION

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiff Dillard/Goldsboro Alumni and Friends, Inc.'s Motion

for Summary Judgment in Wayne County civil matter number 14 CVS 59 ("DGAF Action Motion").

THE COURT, after considering the DGAF Action Motion, briefs in support of and in opposition to the DGAF Action Motion, the evidentiary materials filed by the parties, and other appropriate matters of record, CONCLUDES that the DGAF Action Motion should be GRANTED, in part, and DENIED, in part, for the reasons stated herein.

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP by Rosemary G. Kenyon, Esq. and Jang H. Jo, Esq. for Plaintiff Dillard/Goldsboro Alumni and Friends Association, Inc.*

> *Haithcock, Barfield, Hulse & Kinsey, PLLC by Glenn A. Barfield, Esq. and M. Bryan King, Esq. for Defendant Raymond E. Smith.[1]*

McGuire, Judge.

A. INTRODUCTION.

1. Dillard/Goldsboro Alumni and Friends, Inc. ("DGAF") is a nonprofit corporation comprised of former students of Dillard High School and Goldsboro High School which, historically, has provided fellowship among its members and scholarships to students in the Wayne County, North Carolina area. Recently, however, this organization, its directors, national officers, and members, have been embroiled in a series of disputes that has resulted in the filing of four separate civil actions in Wayne County since January 2014, all of which having been assigned to the undersigned. This lawsuit ("DGAF Action") and the three related lawsuits arise from a governance dispute between rival factions of the DGAF Board of Directors represented on the one hand by Directors Sedrick Dunson and John Hicks ("Dunson/Hicks faction"), and on the other by Raymond E. Smith, Jr. ("Smith")[2] and Directors

---

[1] On September 28, 2015, all claims against Defendant Nathaniel Moore were dismissed without prejudice, and Raymond E. Smith, Jr. is the only Defendant remaining in this lawsuit.

[2] At times material, Smith held the office of DGAF National President.

Patricia Burden, Winston Barnes, and Minerva Woodard ("Smith/Burden faction").[3]  The dispute largely centers on the division of authority between the DGAF Board of Directors and the National President, and a major source of contention is whether the DGAF Board had authority to remove the National President from office. On that point, the Dunson/Hicks faction contends that Smith was properly removed as National President on November 7, 2013, but that he refused to acknowledge his removal. Smith instead undertook a course of conduct intended to obstruct and disrupt the DGAF Board. For its part, the Smith/Burden faction contends that the board members who voted to remove Smith were from chapters that were not properly constituted under DGAF's by-laws.[4]  Accordingly, the Smith/Burden faction contends that Smith's removal as National President was invalid. Of the litany of issues presented to the Court in the four lawsuits, the DGAF Action Motion presents the most fundamental: who has the right, under DGAF's Constitution and By-Laws, to control the organization?

B. PROCEDURAL HISTORY.

2.     On January 14, 2014, Plaintiff filed its Verified Complaint in the DGAF Action, Wayne County civil matter 14 CVS 59.  The DGAF Action requests a variety of declaratory relief ("Claim One"), asserts a claim to recover personal property wrongfully possessed by Defendant Raymond E. Smith, Jr. ("Smith") ("Claim Two"), and seeks preliminary and permanent injunctions ("Claim Three").

---

[3] Though initiated in the name of DGAF, for the purpose of understanding the nature of the dispute before the Court, the plaintiff in the DGAF Action is aligned with the Dunson/Hicks faction. Whether the Dunson/Hicks faction had authority to initiate this action in the name of DGAF has been an issue in these consolidated actions, *see* Burden Action Compl. (Wayne County 14 CVS 340), and the plaintiffs in the Burden Action purport to raise derivative claims on behalf of DGAF, thus effectively placing the organization itself on both sides of this dispute. The disagreement over which faction speaks for DGAF complicates the Court's analysis, but to minimize confusion, the Court will refer to DGAF, in its procedural role in this litigation, simply as "Plaintiff."
[4] The contention is based on the Smith/Burden factions claims that certain chapters had failed to file with the national office various lists of members and other reports required by the DGAF Constitution.

3.      On January 27, 2014, Smith filed his Answer and Counterclaim for Declaratory and Injunctive Relief.  The Counterclaim seeks, among other relief noted below, a declaration that Dunson and certain other members of the DGAF Board of Directors were not validly elected and never had authority to act as directors, and that Smith was not properly removed from office and remains the National President of DGAF. The Counterclaim also seeks an injunction preventing the current directors from removing any records of DGAF, and from appointing any officers. The final notable relief sought in the Counterclaim is an order pursuant to G.S. § 55A-1-60 setting the time, place, and form of notice for a DGAF membership meeting "for the purpose of electing a Board of Directors pursuant to the DGAF articles of incorporation."[5]

4.      On March 11, 2014, Patricia Burden, Winston Barnes, and Minerva Woodard filed a Complaint for Injunctive Relief derivatively on behalf of DGAF (Wayne County civil matter 14 CVS 340; hereinafter referred to as the "Burden Action"). The Burden Action Complaint sought a broad variety of injunctive relief relating to the dispute between two factions of DGAF's Board of Directors. The Burden Action was consolidated with the DGAF Action (14 CVS 59) for pretrial purposes by Order of this Court dated April 4, 2014.[6]

5.      On August 14, 2015, Plaintiff filed the DGAF Action Motion, seeking summary judgment pursuant to North Carolina Rule of Civil Procedure 56(a) ("Rules") in Plaintiff's favor on all claims it raised in the Complaint and pursuant to Rule 56(b) on all counterclaims raised by Defendant in this action. The DGAF Action Motion has been fully briefed and is ripe for determination.

C.  FACTUAL BACKGROUND.

---

[5] Ans. and Countercl. p. 22.
[6] Defendants in the Burden Action have filed a motion for summary judgment seeking dismissal of the claims in that lawsuit.  That motion for summary judgment is the subject of a separate order to be issued by this Court.

6.      The factual background of this action and the underlying dispute between the parties has been set forth in a number of previous Court orders, and that background is incorporated herein by reference. Only that background necessary to provide context to and decide the DGAF Action Motion will be discussed below.

7.      DGAF is a nonprofit corporation, organized under Chapter 55A of the North Carolina General Statutes. DGAF has six local chapters. The home chapter is in Goldsboro, North Carolina.  DGAF also has chapters in Atlanta, New York, New Jersey, Philadelphia, and Washington, D.C.  DGAF has adopted written Constitution and By-Laws ("Constitution and By-Laws") which were last revised and amended in March 1999.

8.      The Constitution and By-Laws provide that the DGAF Board of Directors is comprised of the National President of DGAF, the president of each of the six chapters and a "member-at-large" from each chapter, and the National Treasurer, National Scholarship Chairperson, National Financial Secretary, National Recorder, and the Vice Chairman.[7]  The Constitution and By-Laws provide that the National President and the 12 chapter members of the Board of Directors are "Voting Members" of the Board,[8] and that the other national officers on the Board are "Non-voting Members."  The Constitution and By-Laws state that the Board of Directors "is the absolute governing body of the organization."[9]

9.      DGAF's National President is "elected every three (3) years by the general membership."[10]  In May 2013, DGAF's members elected Smith as DGAF's National President, and on October 5, 2013, Smith took office. Shortly thereafter, a disagreement arose

---

[7] The National Treasurer, Financial Secretary, Scholarship Chairperson, Recorder and Vice Chairman are collectively referred to as "Officers."

[8] The National President is listed as a Voting Member of the Board of Directors, but is permitted to vote "only to break ties" among the other Voting Members.  Const. and By-laws, Art. IV and V.

[9] Const. and By-Laws, Art. V.

[10] *Id.*

concerning the appointment of the remaining national officers of DGAF.[11] On October 16, 2013, the DGAF Board appointed Elizabeth Williams as the National Treasurer. According to the Complaint, Smith refused to allow Williams to assume office or perform her duties. The Complaint also alleges that Smith refused to cooperate with a previously hired accounting firm and paid certain improper honoraria from DGAF funds. Smith disputes some of the facts and characterizations regarding Williams' appointment as National Treasurer.

10. On November 7, 2013, the DGAF Board met and voted to remove Smith from the office of National President. Nevertheless, Smith refused to comply with the Board's requests that he step down and assist in the transition of the office of National President.[12] Instead, Smith attempted to call a meeting of DGAF's national membership to declare the actions of the Board of Directors at the November 7, 2013 meeting invalid, to suspend the New York, New Jersey, Atlanta, and Philadelphia DGAF chapters,[13] and to nullify the DGAF Board's appointment of Officers on October 16, 2013 ("National Membership Meeting").[14] The notice of the National Membership Meeting was addressed to Smith, the DGAF Board, and the past National President. It is undisputed that the notice of the national membership meeting was not sent to all members of DGAF, and was, accordingly, invalid.[15]

11. On January 14, 2014, this action was commenced, and on January 27, 2014, Smith filed an Answer and Counterclaim.

---

[11] Pursuant to DGAF's Constitution and By-Laws, the National President is elected by the national membership, while all other national officers are appointed by the DGAF Board. *See* Const.and By-Laws, p. 12.

[12] The details regarding the November 7, 2013 meeting and Smith's subsequent conduct are set out in Judge Jenkins' February 21, 2014 Order.

[13] The representatives of these chapters voted to remove Smith on November 7, 2013. *See* Second Harris Aff. (Apr. 2, 2014), Ex. E (minutes of November 7, 2013 DGAF Board meeting).

[14] *See* DGAF Action Mot., Ex. 6 (minutes of November 16, 2013 National Membership Meeting).

[15] *See* Smith Aff. (Nov. 12, 2014) (DGAF Action Mot., Ex. 7), Ex. A (Minutes of March 15, 2014 DGAF Board meeting, wherein Smith admits that the meeting notice for the National Membership Meeting was improper, and that only the DGAF Board, and not the membership, could suspend a DGAF chapter).

12. On January 27, 2014, a hearing was held before the Honorable Jack Jenkins on the parties' respective requests for preliminary injunctions and Smith's motion to dismiss. On February 21, 2014, Judge Jenkins issued a preliminary order. In the order, Judge Jenkins concluded that "under the DGAF Constitution, the Board of Directors is the absolute governing body of the organization," that under G.S. § 55A-8-43 "[a] board of directors may remove any officer at any time with or without cause," and "the DGAF Board is empowered to remove any officer, including the National President, with or without cause." In the order, Judge Jenkins found that pursuant to the DGAF Constitution and By-Laws, a quorum for a Board of Directors meeting required the presence of a majority of DGAF's Voting and Non-voting Members of the Board. Judge Jenkins concluded that as of November 7, 2013, there were 17 members of the DGAF Board of Directors, and that 9 members constituted a quorum. Accordingly, he concluded that the DGAF Board's removal of Smith on November 7, 2013, was invalid because at the time the vote was taken only 8 members of the Board were present in the meeting.

13. Following the issuance of the Jenkins Order, the DGAF Board made additional attempts to remove Smith from office, including at a meeting in November 2014. Smith, however, insists that despite Judge Jenkins' order, he cannot be removed from office by the DGAF Board, but only by the national membership of DGAF. Smith also contends that certain chapters of DGAF are not validly constituted under the Constitution and By-Laws, and that the representatives from those chapters are not proper members of the DGAF Board. This contention provided the basis for Smith's repeated attempts to suspend those chapters.

14. The parties' continued dispute has resulted in, as noted above, numerous Court Orders which more thoroughly set out the factual background of this matter, particularly the facts and circumstances arising following the initiation of the DGAF Action. The Court now

turns to consideration of the DGAF Action Motion, and will provide additional factual background as necessary below.

D. DISCUSSION.

15. In the DGAF Action Motion, Plaintiff seeks summary judgment in its favor on its claim for declaratory relief and its claim for recovery of certain personal property. The DGAF Action Motion also seeks summary judgment in Plaintiff's favor on all counterclaims asserted by Smith. The Court will address the DGAF Action Motion as to Plaintiff's claims first, followed by Smith's counterclaims.

16. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting Rule 56(c)). An issue is "material" if its "resolution . . . is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972) (quotations omitted). The moving party bears "the burden of clearly establishing lack of a triable issue" to the trial court. *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 116 (2011) (quoting *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310, 230 S.E.2d 375, 379 (1976)). The moving party may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Variety Wholesalers, Inc.,* 365 N.C. at 523, 723 S.E.2d at 747. In considering a motion for summary judgment, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 326, 572 S.E.2d 200, 204 (2002) (quoting *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988)).

17.     Before discussing the merits of the parties' claims, the Court again notes that a number of prior orders have been entered in these consolidated actions, including rulings on no less than three motions for preliminary injunctions. As is well established, however, the findings and conclusions contained in those orders bear "no precedent to guide the final determination of the rights of the parties." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983 (quoting *State v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357-58, 261 S.E.2d 908, 913 (1980). *See also Lohrmann v. Iredell Mem'l Hosp., Inc.*, 174 N.C. App. 63, 75, 620 S.E.2d 258, 265 (2005) ("It is well settled that findings of fact made during a preliminary injunction proceeding are not binding upon a court at a trial on the merits."). Accordingly, the Court now turns to the consideration of the merits of the parties' claims as presented by the DGAF Action Motion. The Court first addresses DGAF's motion for summary judgment as to its own claims raised in its Verified Complaint, followed by DGAF's motion for summary judgment regarding Smith's counterclaims.

a.  Claim One – Declaratory Judgment.

18.     In Claim One, DGAF seeks four specific declarations pursuant to the North Carolina Declaratory Judgment Act, G.S. § 1-243, *et. seq.*: (1) that Smith was properly removed as National President effective at the November 7, 2013 DGAF Board meeting, pursuant to G.S. § 55A-8-43; (2) that DGAF is entitled to the immediate return of all DGAF property in Smith's possession; (3) that the November 16, 2013 National Membership Meeting was held in violation of applicable law and, therefore, the action taken at that meeting was invalid; and (4) that DGAF, through its currently constituted Board, and not Smith, has the right to control and manage the affairs of DGAF. The Court will address these in turn. As an initial matter, however, the Court concludes that DGAF has shown an actual, justiciable controversy as to the requested relief, thereby satisfying the "jurisdictional

prerequisite" for obtaining relief under the Declaratory Judgment Act. *See Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 319 S.E.2d 59, 61 (1984).

       *i.        Removal of Smith on November 7, 2013.*

19.      The first declaration sought by Plaintiff is that Smith was properly removed as National President at the November 7, 2013 Board of Directors meeting. It is undisputed that a properly noticed Board meeting was held on November 7, 2013, and that some of the directors present voted to remove Smith from office at that meeting.[16] The parties disagree, however, as to whether the Board's action was effective to remove Smith. There are two issues surrounding the vote to remove Smith at the November 7, 2013 meeting: first, whether the Board of Directors was authorized to remove Smith from office, or could Smith only be removed by a vote of the DGAF membership;[17] and, second, if the Board could remove Smith, whether there was a quorum of Directors at the November 7, 2013 meeting for purposes of taking proper Board action.

20.      As to the first issue, Plaintiff argues that the National President is an officer of DGAF and that his removal is governed by G.S. § 55A-8-43. Smith contends that the National President's primary function is as a member of the Board of Directors of DGAF, and his removal as President was governed by G.S. § 55A-8-08, which is applicable to directors. The difference is critical because G.S. § 55A-8-43 provides that "[a] board of directors may remove any officer at any time with or without cause." On the other hand, G.S. § 55A-8-08 provides that [a] director elected by members may be removed by the members only . . . ." Accordingly, if Smith's position is correct, he could only be removed by a vote of DGAF's membership, and not by the Board of Directors.

---

[16] Second Harris Aff. (Apr. 2, 2014) ¶ 12, Ex. E.
[17] The DGAF Constitution and By-laws do not provide any process for the removal of officers or directors.

21.    Smith argues that the National President's primary function is to serve as a member of the Board of Directors.  The Constitution and By-Laws provide that the National President is an officer elected by the general membership of DGAF, and that the "National President shall serve as Chairperson of the Board of Directors and shall preside over all Board meetings."[18] Smith contends "the National President is directly elected by the National Membership to a combined position of director and officer" to represent the interests of those DGAF members who are not affiliated with a particular local chapter in a "governance model that defies application of G.S. 55A-8-43 to the position."[19]   Accordingly, "the position of National President must be considered that of a director elected by the active National membership, such that G.S. 55A-8-08 is the applicable statute, reserving to the National Membership the sole power to remove the sole member of the Board of Directors elected by it."[20]

22.    Smith's argument, however, is not supported by other provisions of the Constitution and By-Laws. First, the Constitution and By-Laws specifically provide that the position of National President is an officer of DGAF, and only serves on the DGAF Board by virtue of holding that office. Second, the National President's authority as a director is limited.  The National President does not have the full authority of the other Voting Members of the Board of Directors, and is only allowed to vote in the event of a tie vote among the DGAF Board.  This significantly circumscribes the National President's ability to influence Board actions, and undercuts the contention that the National President functions primarily as a director representing members unaffiliated with a chapter. Finally, Smith's argument ignores what probably is the clearest statement of organizational intent contained in the

---

[18] Const. and By-Laws, Art. V, "Officers."
[19] Def.'s Mem. Opp. DGAF Action Mot. p. 7.
[20] *Id.*

DGAF Constitution and By-Laws, which declares that the Board of Directors is "the absolute governing body of the organization."[21] This statement is consistent with the notion that DGAF intended for the Board of Directors to have the authority to remove the National President from office.

23.     The Court concludes that the National President of DGAF is an officer and that the removal of the National President is governed by G.S. § 55A-8-43. Under that section, the National President may be removed by the DGAF Board with or without cause.

24.     Having concluded that the Board of Directors was authorized to remove Smith as National President, the Court now turns to whether the DGAF Board properly exercised its authority to remove Smith as National President on November 7, 2013. Since it is undisputed that the Board members present at the meeting voted to remove Smith, the only question remaining is whether a quorum of directors was present at the meeting when the vote was taken.[22]  DGAF contends that only Voting Members of the Board of Directors are considered in deciding quorum requirements. DGAF argues that the undisputed facts establish that at least 7 of the 12 (or 13) Voting Members of the Board were present when the vote to remove Smith was taken, and therefore the Board of Directors properly removed Smith from office.  Smith, however, contends that a quorum required the presence of a majority of all DGAF Directors, both Voting and Non-voting, and that since only 8 of 17 members of the Board of Directors were present at the time the vote to remove him from office was taken, that vote was invalid.

---

[21] Const. and By-Laws, Art. IV.
[22] DGAF's Constitution and By-Laws do not expressly address quorum requirements for Board of Directors meetings, nor what vote of the Board shall constitute Board action.  N.C. Gen. Stat. § 55A-8-24(a), however, provides that "a quorum of a board of directors consists of a majority of the directors in office immediately before a meeting begins," and "[i]f a quorum is present when a vote is taken, the affirmative vote of a majority of directors present is the act of the board."

25.     In ruling on "the parties' respective applications for preliminary injunctive and declaratory relief," Judge Jenkins concluded that both the Voting and Non-voting members of the DGAF Board of Directors should be included in determining quorum requirements and that a quorum was not present at the November 7, 2013 meeting at the time of the vote to remove Smith. The Court, however, is not bound by the Judge Jenkins' findings and conclusions, which were made at a very early stage in this action without benefit of the current record evidence. *See A.E.P. Indus., Inc.*, 308 N.C. at 400 (noting that the issuance of a preliminary injunction "bears no precedent to guide the final determination of the rights of the parties"). Accordingly, the Court will consider the arguments of the parties regarding the quorum requirements.

26.     While DGAF's Constitution and By-Laws do not define a "quorum" of the Board of Directors, they expressly adopt Robert's Rules of Order as a "govern[ing]" document.[23] Robert's Rules defines a "member" of a deliberative body, such as a board of directors, as only those individuals "entitled to full participation in [the organization's] proceedings, that is . . . the right to *attend meetings*, to *make motions*, to *speak in debate*, and to *vote*."[24] Robert's Rules further provides that:

> Whenever the term *member* is used in this book, it refers to full participating membership in the assembly unless otherwise specified. Such members are also described as "voting members" when it is necessary to make a distinction.[25]

With regard to "Quorums in Boards and Committees," Robert's Rules provides that "the quorum is a majority of the members of the board or committee."[26] DGAF contends that a

---

[23] Constitution and By-Laws, Art. IX.
[24] RRO § 1, p. 3 (emphasis in original).
[25] *Id.* (emphasis in original).
[26] *Id.* at § 40, p. 347.

quorum of a majority of the members of the board refers only to a majority of the Voting Members of the DGAF Board.

27. The Court finds Plaintiff's position persuasive. First, counting only the Voting Members of the Board for purposes of determining the presence of a quorum appears to be mandated by Robert's Rules of Order. In addition, counting only Voting Members is consistent with the representative nature of the Board of Directors as the guiding body of DGAF. The Voting Members of the Board are elected to their offices by the national or chapter memberships. The Non-voting Members are on the DGAF Board only by virtue of their appointment by the Board. More fundamentally, however, Plaintiff's position is consistent with the purpose of quorum requirements. The presence of a quorum ensures that action taken by DGAF Board of Directors adequately reflects and represents the will of the DGAF Board. Considering the Non-voting Members as directors for quorum purposes drastically, and potentially dangerously, alters this guarantee of representation. Under such a scenario, a quorum could be established with the five Non-voting Members and only four Voting Members of the DGAF Board. Three of the Voting Members, themselves constituting only a quarter of the Voting Members of the DGAF Board, would then have the authority to act on behalf of DGAF. By counting Non-voting Members for quorum purposes, the organization could lose "the protection against totally unrepresentative action in the name of the body by an unduly small number of persons" that the quorum requirement provides.[27]

28. Ultimately, excluding Non-voting Members is the only manner of determining the presence of a quorum that is consistent with Robert's Rules, consistent with the status and role of Non-voting Members within DGAF, and consistent with the purpose and function of the quorum requirement. Accordingly, the Court concludes that a quorum of the DGAF

---

[27] *Id.* at § 3, p. 21.

Board is properly determined by the number of Voting Members of the DGAF Board present, without considering Non-voting Members. Applying this standard, the undisputed evidence shows that 7 of the 13 Voting Members were present for the vote to remove Smith on November 7, 2013, and that vote constituted action of the DGAF Board and the valid removal of Smith. Therefore, the Court concludes that, as to the declaration sought that Smith was validly removed on November 7, 2013, the DGAF Action Motion should be GRANTED.

  ii.  *Return of Property by Smith.*

29.  Plaintiff also seeks a declaration that DGAF is entitled to the return of certain property and funds in Smith's possession. Having concluded that Smith was properly removed from office, the Court concludes that Smith should be required to return any personal property of DGAF in his possession by virtue of his previous role as National President, and, therefore, as to this declaration, the DGAF Action Motion should be GRANTED.[28]

  iii.  *November 16, 2013 National Membership Meeting.*

30.  Plaintiff's third request for declaratory relief seeks a declaration that the National Membership Meeting held on November 16, 2013, and any action purportedly taken at that meeting, was invalid. As noted above, it is undisputed that the National Membership Meeting was improperly noticed. In fact, the minutes of the March15, 2014 DGAF Board meeting reflect that Smith himself admitted that notice for that meeting was improper.[29] Additionally, Smith admitted that only the DGAF Board, and not the membership, could

---

[28] DGAF's Complaint also contains a separate claim for a mandatory injunction requiring Smith to account for funds expended by DGAF since September 1, 2015. DGAF has not moved for summary judgment on this claim. To avoid all possible confusion, the Court notes here that it is not requiring such an accounting, and that the request for such an accounting lies outside the scope of the declarations entered in this Opinion and Order.

[29] *See* Smith Aff. (Nov. 12, 2014) (DGAF Action Mot., Ex. 7), Ex. A.

suspend a DGAF chapter,[30] thus admitting that the primary action purportedly taken at the National Membership Meeting was also invalid. The Court concludes that the undisputed record evidence shows that proper notice was not provided for the National Membership Meeting on November 16, 2013, and the actions taken at that meeting were therefore invalid. The DGAF Action Motion should be GRANTED as to this request for declaratory relief.

*iv.    Current Board of Directors' Right to Control DGAF.*

31.    Plaintiff's final request for declaratory relief seeks a broad declaration that "DGAF, through its Board of Directors as currently constituted by the appropriate representatives of all six DGAF chapters, has the right to control and manage the affairs of DGAF. . . ."[31] This declaratory relief encompasses two separate issues at dispute here: first, who has the authority to control DGAF, and, second, is the DGAF Board properly constituted?

32.    As to the first issue, the Court has previously noted that the Constitution and By-Laws clearly "provide that the Board of Directors 'shall be the absolute governing body of the organization.' "[32] In addition to that unequivocal statement of authority, the Constitution and By-Laws provide that all officers and members are obligated to fully support the DGAF Board, and that all national officers, with the exception of the National President, are appointed by the DGAF Board. This, coupled with the ability to remove officers discussed above, establishes that the authority to control and manage the affairs of DGAF rests with the DGAF Board of Directors.

33.    The second question raised in this declaratory relief presents a more difficult issue. The parties vehemently disagree as to whether the individuals currently sitting on the DGAF Board are properly authorized to do so. Smith argues that the Atlanta, New Jersey,

---

[30] *Id.*
[31] Compl. ¶ 66(d).
[32] Final Order on Mot. Prelim. Inj. and Show Cause ¶ 10, n. 12.

and Philadelphia chapters have not complied with various recordkeeping and other requirements in Article VI of the Constitution and By-Laws ("Chapter Requirements"), and the representatives from those chapters have no right to sit on the DGAF Board. Smith further contends that the Atlanta, New Jersey, and Philadelphia chapters were suspended by the Board of Directors at a meeting on March 15, 2014 (the "March 15 Meeting"). Plaintiff contends that the chapter requirements were not enforced until Smith got into the dispute with the Board of Directors, but that the chapters have now come into compliance with the record keeping requirements. Plaintiff also argues that the Atlanta, New York, and Philadelphia chapters were not suspended because there was not a quorum of the Board of Directors present at the March 15 Meeting.

34.     As an initial matter, the Court notes that there is a factual dispute as to whether all DGAF Chapters have fully complied with the Chapter Requirements contained in Article VI of the Constitution and By-Laws. The Chapter Requirements in the Constitution and By-Laws, by their own language, are compulsory and not merely suggestive. Among other things, the Chapter Requirements provide that chapter officers "must include a President, Vice President, Secretary, Treasurer, and Member-at-large,"[33] that a roster of active members "must be maintained and filed with the Board of Directors,"[34] and that "annual financial reports . . . must be submitted to the Board of Directors."[35] Plaintiff has not provided the Court with evidence that definitively establishes that any of the chapters were in full compliance. In his affidavits dated November 12, 2014, and January 12, 2015, Smith testified that he personally reviewed DGAF's records and found that a number of chapters failed to comply with the Chapter Requirements and, as of January 12, 2015, were

---

[33] Const. and By-Laws, Art. VI § 2.
[34] *Id.* at Art. IV § 3.
[35] *Id.* at Art. IV § 7.

still not in compliance.[36] On the other hand, Helen Harris, National Recording Secretary of DGAF, testified in her affidavit dated January 26, 2015, that Smith could not have reviewed DGAF's records and that, upon her review, certain information for the allegedly noncompliant chapters had been provided.[37]

35. Plaintiff contends, however, that the Constitution and By-Laws do not provide for the automatic suspension of a chapter for failure to comply with the Chapter Requirements. Rather, Article VI expressly provides that "[f]ailure on the part of a chapter to comply with standards set in this constitution *may result* in suspension, expulsion or dissolution of a chapter."[38] The Court concludes that the Constitution and By-Laws do not provide for the automatic suspension, expulsion, or dissolution of a DGAF chapter for failure to comply with the Chapter Requirements. Accordingly, the question becomes whether the DGAF Board took valid action to suspend the allegedly noncompliant chapters.[39] If the DGAF Board took no such action, the compliance of these chapters makes no difference in the outcome of DGAF's fourth claim for declaratory relief. The Court now turns to whether the DGAF Board took any valid action to suspend or otherwise remove any DGAF chapter.

36. The record reflects that two separate attempts were made to suspend allegedly noncompliant chapters. The first attempt to do so was at the National Membership Meeting. As noted above, this meeting was improperly noticed and, as a result, invalid. In addition, Smith conceded that the Board of Directors, and not the national membership, has the authority to suspend chapters.

---

[36] Smith Aff. (Nov. 12, 2014) ¶ 3; Smith Aff. (Jan. 12, 2015) ¶¶ 3-4.
[37] Supp. Harris Aff. (Jan. 26, 2015) ¶¶ 2-3.
[38] *Id.* at § 8.
[39] To elaborate, the only way the issue of compliance becomes material is if the DGAF Board suspended any chapters, and those chapters contended that the suspension was wrongful based on the argument that the suspended chapter was in compliance with all Chapter Requirements. In such a case, the determination of compliance would clearly be material, and would, based on the dispute noted above, be an issue for a jury.

37. The second attempt to suspend allegedly noncompliant chapters occurred at the March 15 Meeting. Smith contends that this meeting was a regularly scheduled board meeting required by the Constitution and By-Laws, and Plaintiff has not disputed that contention. The undisputed facts establish that seven of the thirteen Voting Members boycotted the meeting, and advised Smith that they would not attend.[40] They further advised Smith that "there will not be quorum represented" and "[i]t is our expectation there will not be any business conducted and transacted."[41] Smith responded that the board meeting would proceed nonetheless.[42]

38. The minutes of the March 15 Meeting reflect that seven total members of the Board of Directors were present at the commencement of the meeting including six Voting Members: Smith, Kevin Gerald, Winston Barnes, Patricia Burden, Minerva Ward-Woodard, and Laverne Lowery. One Non-voting Member, Diane George, National Financial Secretary, also was present.[43] The minutes further state that Kevin Gerald, president of the New York Chapter duly appointed Natalia Gerald as a stand-in for Mamie Gill,[44] the New York Member-at-Large who boycotted the meeting, pursuant to the provisions of the Constitution and By-Laws, which provided as follows:

> VOTING POWER WITHIN THE BOARD OF DIRECTORS
> Voting power shall be vested in the voting membership of the Board with the National President and Vice-President or Vice Chairperson voting only to break ties. In the absence of a voting member, stand-ins may be appointed with full voting privileges by [the] Chapter President.[45]

39. Believing that nine Board members needed to be present to have a quorum pursuant to Judge Jenkins' order, Smith appointed Geraldine Shearod to act in the absence

---

[40] *See* Dunson Aff. (Apr. 2, 2014), Ex. Q.
[41] *Id.*
[42] *Id.*
[43] Smith Aff. (Nov. 12, 2014) ¶ 4, Ex. A, pp. 1, 3.
[44] *Id.* at p. 10.
[45] Const. and By-Laws, Art. V, p. 6.

of Helen Harris, National Recorder, who also boycotted meeting.[46] The National Recorder is a Non-voting Member of the Board. The minutes reflect that those in attendance believed that the appointments of Natalia Gerald and Shearod created a quorum.[47]

40.     The minutes of the March 15 Meeting state that a motion was made to suspend the Atlanta, New Jersey, and Philadelphia chapters for a period of 60 days.[48]  The motion provided that the suspended chapters would have 60 days to come into compliance with the requirements of the Constitution and By-Laws, and could apply for reinstatement.  The minutes state that the motion also provided that any of the suspended chapters that failed to achieve "full compliance" would be "dissolved according to the [Constitution]."[49]  The motion was approved unanimously.[50]  There is no evidence before the Court regarding whether the Atlanta, New Jersey, and Philadelphia chapters applied for reinstatement.

41.     Based on these facts, the question is whether a quorum existed at the March 15 Meeting such that the suspension of the Atlanta, New Jersey, and Philadelphia chapters was proper DGAF Board action. The determination of this issue hinges on whether the ad hoc appointment of Natalia Gerald created a quorum of seven Voting Members.[51] Plaintiff raises two separate, but related, arguments in contending that the appointment of Natalia Gerald as a stand-in was improper.  First, Plaintiff contends that the appointment amounted to a "suspension" or manipulation of DGAF's quorum requirements in violation of the Non-

---

[46] Smith Aff. (Nov. 12, 2014) ¶ 4, Ex. A, p. 3.
[47] *Id.*
[48] *Id.* at p. 5.
[49] *Id.*
[50] *Id.*
[51] The Court has already determined, supra, that a quorum of the DGAF Board of Directors required the presence of 7 of the 13 Voting Members of the Board, and not the presence of a majority of all Members of the Board (Voting and Nonvoting).  Accordingly, the appointment of Geraldine Shearod as Acting National Recorder is not relevant to issue of whether a quorum was present, and the Court will not address Plaintiff's arguments specifically challenging Shearod's appointment.

Profit Corporations Act and Robert's Rules.[52]  Second, Plaintiff contends that Natalia Gerald was not a member of DGAF, and DGAF's Constitution and By-Laws do not permit a non-member of the organization to be granted voting rights.[53]

42.     With regard to the first contention, Plaintiff argues that Robert's Rules prohibits the suspension of organizational rules, including quorum requirements, which protect fundamental principles of parliamentary procedure and protect absentees.[54] Plaintiff's argument has some appeal. Nine DGAF Board members, including seven Voting Members, notified Smith that they would not attend the March 15 Meeting, and that it was their position that the Board of Directors could not properly transact business at the meeting. Smith proceeded with the meeting, and believing that a quorum was not present, attempted to create one.  While these facts suggest Smith may have acted improperly, other facts belie this contention. First, Kevin Gerald, not Smith, appointed Natalia Gerald as the stand-in New York Member at Large for purposes of the meeting.  Second, the DGAF Constitution expressly authorizes a chapter president to appoint a stand-in member with full voting rights for purposes of conducting meetings of the Board of Directors. There is no language in the provision permitting a stand-in Board member to be appointed that suggests that the process cannot be used to create a quorum.  Ultimately, the Court is not persuaded that Smith or anyone else "suspended" any DGAF rule, or that using DGAF's own rules to attempt to create a quorum amounted to a manipulation of those rules.

43.     Plaintiff's contention that DGAF's Constitution and By-Laws do not authorize the appointment of a non-member of DGAF as a stand-in Voting Member of the Board, however, is compelling.  The by-law permitting appointment of a stand-in to vote in a Board

---

[52] Pl.'s Mem. Supp. DGAF Action Mot. pp. 20-21.
[53] *Id.* at p. 21.
[54] *Id.* at p. 20.

of Directors meeting does not expressly state that such stand-ins are limited to members of DGAF. Nevertheless, Plaintiffs cite Article VII of the DGAF Constitution which states that "[v]oting power is limited to financially active members,"[55] for the proposition that this provision, when read in proper context, limits the appointment of stand-ins to active members of DGAF. The Court agrees. A corporation's by-laws are a contract between the corporation and its members. *See Crider v. Jones Island Club, Inc.*, 147 N.C. App. 262, 267, 554 S.E.2d 863, 866 (2001); *Hilco Transp., Inc. v. Atkins*, 2016 NCBC LEXIS 5 *28 (N.C. Super. Ct. 2016). Accordingly, "[t]he various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *In re Foreclosure of a Deed of Trust*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011) (citation and quotation marks omitted). "It is presumed that each part of the contract means something." *Brown v. Lumbermens Mut. Casualty Co.,* 326 N.C. 387, 393, 390 S.E.2d 150, 153 (1990) (citation omitted). Construing the provisions in the DGAF Constitution and By-Laws harmoniously and giving each provision effect, the most sensible interpretation of the provision permitting appointment of a stand-in for an absent Board member is that the stand-in must be an active member of DGAF.

44.     In addition, Robert's Rules supports the general proposition that the right to vote typically is limited to members of an organization, and cannot be extended to non-members.[56] Robert's Rules also emphasizes that quorum requirements are intended to protect voting members who are absent from a meeting.[57] These propositions are particularly applicable to the right to vote on an organization's governing body, like the DGAF Board of

---

[55] *Id.* at p. 21.
[56] RRO § 25, p. 263 ("Thus, since it is a fundamental principle of parliamentary law that the right to vote is limited to the members of an organization who are actually present at a regular or properly called meeting, the rules cannot be suspended so as to give the right to vote to a nonmember . . . .").
[57] *Id.* at § 25, pp. 263-64.

Directors, where allowing a non-member to vote in the place of an absent Board member would seem antithetical to the both the interests of the membership and the absent Board member's rights.

45. The Court concludes that the provision of Article V of the Constitution and By-Laws authorizing appointment of a stand-in for an absent Voting Member of the Board of Directors limits such appointments to active members of DGAF, and does not permit appointment of an individual who is not an active member of the organization. The Court must now determine whether competent evidence in the record establishes as an undisputed fact that Natalia Gerald was, or was not, an active member of DGAF on March 15, 2014.

46. Plaintiff claims that Natalia Gerald "is not a graduate of either Dillard High School or Goldsboro High School" and "could only hold membership in DGAF as an Associate Member."[58] Plaintiff's evidence that Natalia Gerald was not a member of DGAF, however, is muddled at best. Plaintiff relies primarily on the affidavit testimony of Sedrick Dunson as establishing that Natalia Gerald was not a member of DGAF at the time of the March 15 Meeting.[59] Dunson's affidavit states that an individual identified as "Nat Van" was not a member of DGAF, but does not contain any statements regarding an individual named Natalia Gerald, and does not state that Nat Van is Natalia Gerald.[60] Dunson also identifies "Nat Van" as "Kevin Gerald's wife,"[61] but neither the minutes of the March 15 Meeting nor any other evidence in the record that the Court can find state that Natalia Gerald was Kevin Gerald's wife. The Court would have to assume that "Nat Van" is the Natalia Gerald identified in the March 15 Meeting minutes in order to consider Dunson's testimony competent evidence that Natalia Gerald was not a member of DGAF. Such an assumption,

---

[58] Pl.'s Mem. Supp. DGAF Action Mot. p. 21.
[59] Pl.'s Mem. Supp. DGAF Action Mot., Exs. 8 and 15.
[60] Pl.'s Mem. Supp. DGAF Action Mot., Ex. 15, ¶¶ 35-36.
[61] *Id.* at ¶ 35.

the Court concludes, is inappropriate at this procedural stage as all inferences of fact, such as this one, must be drawn in Smith's favor as the nonmovant. *See Se. Shelter Corp.*, 154 N.C. App. at 326, 572 S.E.2d at 204.

47. Plaintiff also claims that its Exhibit 8, submitted in support of the DGAF Action Motion, is evidence that Natalia Gerald was not a member of DGAF on March 15, 2014. Plaintiff's Exhibit 8 consists of a copy of an email, purportedly send by Kevin Gerald, and an accompanying undated document titled "Dillard/Goldsboro Alumni and Friends Inc. New York Chapter Member Information Sheet."[62] The document lists names and contact information for seven individuals, but does not include Natalia Gerald. The email and document, however, are not attached to or identified in an affidavit or in deposition testimony. Plaintiff provides no evidence of the purpose behind the email or the document, how the information in the document was compiled, or who compiled it. Even if the Court believed Exhibit 8 to be competent evidence, which it does not, the email is dated March 22, 2014, a week after the March 15 Meeting, and neither the email nor the document itself states that the document is a definitive list of all members of the New York chapter of DGAF as of March 15, 2014. Defendants, on the other hand, have not filed any record evidence regarding Natalia Gerald and whether she was a member of DGAF. Here again, however, the Court would have to make an inference of fact, that Exhibit 8 specifically lists all members of the New York DGAF chapter as of March 15, 2014, to conclude as a matter of law that Natalia Gerald was not a member of that Chapter on the date she was appointed a stand-in Voting Member by Kevin Gerald.

48. The Court concludes that the parties have failed to provide any competent evidence from which it can be determined as a matter of undisputed fact whether Natalia

---

[62] Pl.'s Mem. Supp. DGAF Action Mot., Ex. 8.

Gerald was a member of DGAF on March 15, 2014. Such evidence will have to be proffered at trial, and a jury will have to determine the question. The Court concludes that, as to the declaration sought that the current DGAF Board is properly constituted, the DGAF Action Motion should be DENIED.

    b. <u>DGAF's Claim Two – Action to Recover Personal Property</u>.

49. In Claim Two, DGAF alleges that it is "entitled to have all DGAF property in [Smith's] possession, custody, or control repossessed by the Sheriff of Wayne County or the sheriff of the county in which such property is located, and placed in DGAF's possession or in the possession of one of DGAF's agents or assigns."[63] The Court has already concluded that Smith should be required to return any personal property of DGAF in his possession by virtue of his previous role as National President. Compliance with the Court's Order on this point will necessarily resolve Claim Two and, therefore, the DGAF Action Motion as to Claim Two should be DENIED as MOOT.

    c. <u>Smith's Counterclaims</u>.[64]

50. In response to the Complaint, Smith has attempted to assert counterclaims for declaratory and injunctive relief against Plaintiff. Smith also seeks an order pursuant to G.S. 55A-1-60 setting a meeting of DGAF's membership for the purpose electing a Board of Directors. The DGAF Action Motion seeks summary judgment in DGAF's favor on all of Smith's counterclaims.

51. Smith's requests for relief are not set out as separate claims or counts and are difficult to accurately discern. Accordingly, the Court will address the relief requested as in

---

[63] Compl. ¶ 69.

[64] Plaintiff contends that to the extent Smith has attempted to bring derivative claims on behalf of DGAF as part of his counterclaims, he lacks standing to so for several reasons. Pl.'s Mem. Supp. DGAF Action Mot. p. 22. Since the Court concludes that Smith's counterclaims are subject to dismissal on other grounds as set out below, it need not consider Plaintiff's standing argument.

paragraphs 85-88 of Smith's Counterclaim, which appear to encompass the various relief Smith is seeking.

> i. *Declaration that DGAF's Board of Directors' did not have authority to remove Smith as National President, that only DGAF's national membership could remove Smith from office, and that Smith remains National President.*[65]

52. The Court has addressed the declaratory relief requested by Smith, and for the reasons set out above concludes that the dispositive facts are undisputed and that DGAF is entitled to judgment as a matter of law. Accordingly, the DGAF Action Motion for summary judgment as to the relief sought by Smith in paragraph 85 of his counterclaims should be GRANTED.

> ii. *Order enjoining Board of Directors from "acting in the capacity of directors for DGAF unless and until" elected by the membership, from seizing or removing books and records from DGAF headquarters, and from appointing officers of DGAF.*[66]

53. Smith has made no argument regarding this particular request for relief in response to Plaintiff's Motion. To the extent Smith seeks an injunction against the current DGAF Directors until they are elected by the national membership,[67] and to prohibit them from removing books and records, and from appointing officers, the DGAF Action Motion should be GRANTED.

---

[65] Smith's Countercl., ¶ 85.

[66] *Id.* at ¶ 86.

[67] In his Counterclaim, Smith alleged that DGAF's articles of incorporation, which provide that directors of DGAF are elected "by open [ballot] every two years", requires that directors be elected by the national membership and not, as provided in the Constitution and By-Laws, by the members of their respective chapters. Smith Countercl. ¶¶ 18-21. Smith does not argue this position in his response to Plaintiff's Motion and appears to have abandoned this contention. Nevertheless, the Court concludes that there is nothing inconsistent between the Articles of Incorporation's specification that elections be conducted by open ballot, and the Constitution and By-Laws provision that the chapter officers which will serve as directors be elected at the chapter level.

*iii.  Request that Court order a national membership meeting of national members of DGAF pursuant to G.S. § 55A-1-60.*

54. Smith requests that the Court issue an order "setting the time, place and form of notice of a meeting of the membership of the DGAF, for the purpose of electing a Board of Directors pursuant to the DGAF articles of incorporation."[68] Although Smith makes no argument in support of this request in his response to the DGAF Action Motion, this request appears to be related to Smith's allegations that DGAF's Articles of Incorporation require that directors be elected by the national membership and not the respective chapter memberships. For the reasons discussed above, the Court concludes in its discretion that such meeting is not necessary and declines to order such meeting. Accordingly, the DGAF Action Motion as to the relief sought by Smith in paragraph 87 of his counterclaims should GRANTED.

*iv.  Request that Court order PNC Bank to allow Smith access to DGAF's accounts.*

55. Smith makes no argument in support of this request in his response to Plaintiff's Motion. In addition, the Court already has concluded that Smith was properly removed as National President, and he would not appear to have any right to access DGAF's bank accounts. Accordingly, the DGAF Action Motion as to the relief sought by Smith in paragraph 88 of his counterclaims should GRANTED.

THEREFORE, IT IS ORDERED that:

56. As to Plaintiff's First Claim for Relief, the DGAF Action Motion is GRANTED, in part, and the Court enters the following declarations:

---

[68] Smith Countercl. ¶ 87.

a.  Defendant Smith was properly removed as National President and Chairman of the Board of Directors of DGAF on November 7, 2013, pursuant to G.S. § 55A-8-43.[69]

b.  DGAF is entitled to the immediate return of all DGAF funds and property in Defendant Smith's possession, custody, or control, including but not limited to funds, files, stationery, bank statements, checkbooks, check stubs, and/or keys.

c.  The purported National Member Meeting of November 16, 2013, was held in violation of applicable law and DGAF's Constitution and By-Laws and, therefore, any purported decisions or actions taken at that meeting, including but not limited to the purported suspensions of any chapters, are invalid.

57.  As to the final declaratory relief sought in Plaintiff's First Claim for Relief, that "DGAF, through its Board of Directors as currently constituted by the appropriate representatives of all six DGAF chapters, has the right to control and manage the affairs of DGAF. . . .", the DGAF Action Motion is DENIED.

58.  As to Plaintiff's Second Claim for Relief, the DGAF Action Motion is DENIED as moot.

59.  As to all counterclaims asserted by Defendant Smith, the DGAF Action Motion is GRANTED, and Smith's counterclaims are dismissed.

---

[69] Plaintiff has not argued that, should the Court conclude that Smith was removed as National President on November 7, 2013, any action by Smith as National President taken after that date should be retroactively declared void. In any event, the Court believes that its decision here has no such effect, particularly given Judge Jenkins' conclusion of law regarding the quorum calculation method and his conclusion that Smith, as of the date of that order, remained in office. Accordingly, although the Court concludes that the DGAF Board properly voted to remove Smith, as a result of the Jenkins Order, Smith's removal is, essentially, effective as of the date of this Order.

This the 27th day of April, 2016.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases